```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
PEARL LINDENBAUM, as Executrix of
the Estate of JAMES LINDENBAUM,

                    Plaintiff,

        -against-

NORTHWELL HEALTH, INC.; KATHY
O'KEEFE, individually and as
Executive Director of Pilgrim
Psychiatric Center; A. SHAHNAZ
RASHID, M.D.; EKAMBARAM ILAMATHI,
M.D.; ROSANNA SABINI, D.O.; MARIA
SHEENNA SICA, D.O.; and JANE/JOHN
DOES Nos. 1-4,

                    Defendants.
-----------------------------------X
```

MEMORANDUM & ORDER
21-CV-1525(JS)(SIL)

APPEARANCES

For Plaintiff:              Matthew Bryant, Esq.
                           Ruskin Moscou Faltischek, P.C.
                           1425 RXR Plaza, 15th Floor, East Tower
                           Uniondale, New York  11556

For Defendant
Kathy O'Keefe:             Dorothy O. Nese, Esq.
                           New York State Attorney General's Office
                           Nassau Regional Office
                           200 Old Country Road, Suite 460
                           Mineola, New York  11501

For Defendants
Northwell Health, Inc. &
Northwell Physician
Defendants:                Peter DeNoto, Esq.
                           Laura Murphy, Esq.
                           Heidell, Pittoni, Murphy & Bach, LLP
                           1050 Franklin Avenue
                           Garden City, New York  11530

1

SEYBERT, District Judge:

Pearl Lindenbaum ("Plaintiff"), as the Executrix of the Estate of James Lindenbaum ("Lindenbaum"), initiated this action against Northwell Health Inc. ("Northwell"), several Northwell employees (together with Northwell, the "Northwell Defendants"), and Kathy O'Keefe ("Defendant O'Keefe"), the Executive Director of Pilgrim Psychiatric Center ("Pilgrim" or "Pilgrim PC"), following Lindenbaum's death while under Defendants' care.  Pending before the Court are (1) Defendants' respective motions to dismiss (Northwell Defs. Mot., ECF No. 24; Def. O'Keefe Mot., ECF No. 27); (2) Plaintiff's cross-motion for leave to file an amended complaint (Pl. Cross-Mot., ECF No. 31); and (3) Defendant O'Keefe's cross-motion to seal certain medical exhibits (ECF No. 37).  For the following reasons, Defendant O'Keefe's motion to dismiss is GRANTED IN PART and DENIED IN PART; the Northwell Defendants' motion to dismiss is DENIED; Plaintiff's cross-motion to file an amended complaint is GRANTED IN PART and DENIED IN PART; and Defendant O'Keefe's cross-motion to seal is GRANTED.

BACKGROUND

I.  Plaintiff's Complaint

    A.  The Parties

Lindenbaum had a history of serious medical conditions, including Type II Diabetes, Chronic Kidney Disease, Hypertension, Hypersensitivity Lung Disease, Hyperthyroidism, and Schizophrenia.

2

(Compl., ECF No. 1, ¶ 20.)  These medical conditions, which the Complaint refers to as "Severe Persistent Mental Illnesses," or "SPMI," rendered him mentally incompetent to care of himself.[1] (Id. ¶¶ 21-22.)  Lindenbaum's mother, Plaintiff Pearl Lindenbaum, served as Lindenbaum's court-appointed guardian, and now as the executrix of his estate.  (Id. ¶¶ 2-5.)  She is a resident of the State of Florida.  (Id. ¶ 1.)

Defendant O'Keefe served as the Executive Director of Pilgrim PC, a New York State facility that provides inpatient and outpatient psychiatric services.  (Id. ¶¶ 8, 11, 28.)  Plaintiff alleges that, during Defendant O'Keefe's tenure, she was a trained psychologist but not a licensed medical doctor or registered nurse. (Id. ¶ 10.)

The Northwell Defendants include:  Northwell Health, Inc., a network of New York State hospitals and related facilities, including the Southside Hospital in Bay Shore, New York (id. ¶¶ 7, 14); A. Shahnaz Rashid, M.D., an internist at Northwell (id. ¶ 13, 51); Ekambrim Ilamathi, M.D., an internist and nephrologist at Northwell (id. ¶¶ 14, 52); Rosanna Sabini, D.O., a rehabilitationist at Northwell (id. ¶¶ 15, 53); and Maria Sheenna Sica, D.O., a specialist in hospice and palliative care at

---

[1] In her Complaint, Plaintiff refers to Lindenbaum's condition as "Serious Persistent Mental Illness," but she corrects the terminology in her Proposed Amended Complaint. (PAC, ECF No. 31-2.)

Northwell (id. ¶¶ 16, 54).  Plaintiff also named four Jane or John Doe Defendants who are alleged to have provided professional services to Lindenbaum while employed as physicians at Northwell. (Id. ¶ 17.)

    B.   Factual History

On October 1, 2015, pursuant to a court order, Lindenbaum was transferred to Pilgrim PC for full-time, in-patient care and observation.  (Id. ¶¶ 26, 28.)  One year later, and allegedly without Plaintiff's explicit agreement, Plaintiff alleges that Pilgrim transferred Lindenbaum to Pilgrim's State Operated Community Residence ("SOCR").  (Id. ¶ 31.)  Plaintiff states that residents of SOCR facilities are capable of self-care and given autonomy with respect to their lifestyle, day-to-day interactions, and treatment, whereas Lindenbaum, as an SPMI patient, was designated "high maintenance" and required assistance with self-care, diet, feeding, medication, and hourly supervision.  (Id. ¶¶ 23, 25, 33.)  Plaintiff alleges that, absent such care, Lindenbaum would not feed himself, take his medication, or engage in other necessary self-care.  (Id. ¶ 24.)  Lindenbaum resided as Pilgrim's SOCR from October 2016 through February 15, 2019.  (Id. ¶ 31.)

On February 15, 2019, Lindenbaum presented to Northwell for emergency care (the "First Admission").  (Id. ¶ 34.)  Plaintiff alleges that at the time of his First Admission, Lindenbaum was malnourished, had not been taking his medication, and had developed

new medical conditions, including Chronic Obstructive Pulmonary Disease, multiple cysts on both kidneys, and hyperlipidemia. (Id. ¶¶ 35-37.) Plaintiff further alleges that Northwell did not have sufficient medical records from Pilgrim to assess Lindenbaum's history of medical conditions. (Id. ¶ 38.) According to the Complaint, Lindenbaum's condition worsened during his First Admission due to Northwell's negligent care. (Id. ¶¶ 39-41.) During the First Admission, the Complaint identifies A. Shahnaz Rashid, M.D; Ekambrim Ilamathi, M.D.; and Rosanna Sabini, D.O. as Lindenbaum's attending physicians. (Id. ¶¶ 51-53.) On or about February 22, 2019, Plaintiff alleges that Northwell discharged Lindenbaum, notwithstanding his worsened condition. (Id. ¶ 42.)

On February 23, 2019, Lindenbaum presented to Pilgrim's SOCR "in a state of gross neglect, under-medicated, inappropriately medicated, malnourished, anemic, severely infected, depressed, weak, and suffering from diarrhea, dysphagia and worsening pneumonia." (Id. ¶ 43.) As a result, Pilgrim rejected Lindenbaum for admission; therefore, he returned to Northwell (the "Second Admission"). (Id. ¶¶ 45-47.) Plaintiff asserts that Northwell's neglect continued during Lindenbaum's Second Admission. (Id. ¶ 48.) The Complaint identifies Maria Sheenna Sica, D.O. as Lindenbaum's attending physician during the Second Admission. (Id. ¶ 54.) Lindenbaum died on March 22, 2019. (Id. ¶ 49.)

C.   <u>Causes of Action</u>

Based on the foregoing factual allegations, Plaintiff's Complaint asserts the following causes of action: (1) Section 1983 claim against Pilgrim; (2) medical malpractice against the Northwell Defendants; and (3) conscious pain and suffering against the Northwell Defendants.  (<u>Id.</u> ¶¶ 55-80.)

II.  <u>Plaintiff's Proposed Amended Complaint</u>

Plaintiff's Proposed Amended Complaint (PAC, ECF No. 31-1) includes the following salient additions:

First, the Proposed Amended Complaint adds Pilgrim PC as a named defendant, along with four Jane or John Doe Defendants "responsible for approving or denying the readmission of [Lindenbaum] into full-time residential care at Pilgrim." (<u>Id.</u> ¶ 13.)

Second, Plaintiff pleads additional factual allegations with respect to Lindenbaum's residence in Pilgrim's SOCR[2] (<u>id.</u> ¶¶ 38-53, 55-57) and Defendant O'Keefe's lack of qualifications to serve in her role as Pilgrim PC's Executive Director (<u>id.</u> ¶¶ 78-82).  Specifically, Plaintiff alleges that, while at Pilgrim's SOCR, where residents are expected to voluntarily feed themselves

---

[2] Plaintiff also alleges that she employed a "private Geriatric Care Manager who visited and monitored [Lindenbaum] daily" and that "on or about July 16, 2016, [Lindenbaum] allegedly assaulted another resident as a result of his unstable conditions including schizophrenia and dementia."  (<u>Id.</u> ¶¶ 28, 34.)

and report twice daily (without reminders) to staff to receive medication, Lindenbaum lost 30-40 pounds "because he would not adequately or properly feed himself," and that he regularly skipped his medication, did not eat, or otherwise engage in self-care due to Pilgrim's failure to adequately supervise him.  (Id. ¶¶ 38, 41-42.)  Plaintiff further alleges that on "numerous" occasions she had Lindenbaum assessed by private practitioners who "determined that there was no physical reason for [Lindenbaum's] weight loss." (Id. ¶ 43.)  In addition, Plaintiff avers that Lindenbaum received weekly treatment from Dr. Mukesh Sharoha, a psychiatrist at Pilgrim who, on September 25, 2018, recommended to Pilgrim that Lindenbaum required readmission into full-time in-patient care.  (Id. ¶¶ 45-47.)  According to Plaintiff, Defendant O'Keefe, given her responsibility to "create[e] and approv[e] policies or procedures for admittance or re-admittance to and from SOCR and full-time residential care," or in the alternative the Pilgrim Jane or John Doe Defendants, "received and rejected Dr. Sharoha's recommendation to readmit [Lindenbaum]," resulting in his continued residence at SOCR.  (Id. ¶¶ 48-51.)  This decision was apparently reaffirmed by Pilgrim staff on January 27, 2019.  (Id. ¶ 53.)  With respect to Defendant O'Keefe's qualifications to hold her position, Plaintiff asserts Defendant O'Keefe "was not qualified to occupy the office of Executive Director as a non-

professional without a license" to practice medicine.  (Id. ¶¶ 10, 78-82.)

Last, with respect to her causes of action, Plaintiff clarifies that her Section 1983 claim for deprivation of minimally adequate care is against Defendant O'Keefe or the Pilgrim PC Jane or John Doe Defendants, not Pilgrim.  Plaintiff also adds a claim under the Americans with Disabilities Act ("ADA").  (Id. ¶¶ 91-98.)

III. Procedure

Defendants move to dismiss Plaintiff's Complaint, and Plaintiff cross-moves for leave to file an amended complaint.  In response to Plaintiff's cross-motion, Defendants submitted oppositions to the cross-motion and replies in further support of their respective motions to dismiss, to which Plaintiff filed a reply.  Further, in opposition to Plaintiff's cross-motion for leave to amend and in further support of her motion to dismiss, Defendant O'Keefe sought leave to file under seal certain exhibits consisting of records compiled by the Office of Mental Health in connection with Lindenbaum's confinement and hospitalization at Pilgrim.

DISCUSSION

I. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of

course, as is the case here, "a party may amend its pleading only with the opposing party's written consent or the court's leave." See FED. R. CIV. P. 15(a).  Whether to grant leave to amend is a decision squarely within the district court's discretion.  Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 553 (2010) (citing Foman v. Davis, 371 U.S. 178, 182, (1962)).  A court "should freely give leave when justice so requires."  FED. R. CIV. P. 15(a).  However, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."  Doe v. Maier, No. 18-CV-4956, 2020 WL 9812927, at *9 (E.D.N.Y. Mar. 24, 2020) (quoting Williams v. Citigroup Inc., 659 F.3d 208, 213-214 (2d Cir. 2011)).

     Where, as here, Plaintiff moves to amend the Complaint while Defendants' respective motions to dismiss are pending, "the Court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion to dismiss as moot to considering the merits of the motion in light of the amended complaint.'"  Id. at *10 (quoting MB v. Islip School Dist., 14-CV-4670, 2015 WL 3756875, at *4 (E.D.N.Y. June 16, 2016); see also Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 303 (2d Cir. 2020) (sanctioning these approaches).  Because Defendants argue that the proposed amendments are futile, the Court will "evaluat[e]

the motion in light of the facts alleged in the amended complaint." Pettaway, 955 F.3d at 304; Doe, 2020 WL 9812927, at *10 (same). "In assessing futility, courts must analyze 'whether a proposed pleading would be able to withstand a dispositive pretrial motion.'" Doe, 2020 WL 9812927, at *10 (quoting Themis Capital, LLC v. Democratic Republic of Congo, No. 09-CV-1652, 2013 WL 1687198, at *6 (S.D.N.Y. Apr. 18, 2013)).

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

II.  <u>Analysis</u>

Before assessing whether Plaintiff's proposed amendments are futile, the Court considers Defendant O'Keefe's request to seal certain exhibits consisting of records compiled by the Office of Mental Health in connection with Lindenbaum's confinement and hospitalization at Pilgrim.

A.  <u>Defendant O'Keefe's Motion to Seal and Consideration of Documents Beyond the Pleadings</u>

In opposition to Plaintiff's cross-motion to amend and in further support of her motion to dismiss, Defendant O'Keefe appends medical records "bearing on Plaintiff's mental and psychiatric condition at the time of the events complained of in this action" and asks she be granted permission to file them under seal.  (Def. O'Keefe Reply at 11, ECF No. 38.)  The Court hereby GRANTS Defendant O'Keefe's request to file the appendix under seal, <u>Hand v. N.Y.C. Transit Auth.</u>, No. 11-CV-0997, 2012 WL 3704826, at *5 (E.D.N.Y. Aug. 26, 2012), but declines to consider them at this stage of the proceeding.  <u>See</u> <u>Lynch v. City of New York</u>, 952 F.3d 67, 75 (2d Cir. 2020); <u>Doe v. New York Univ.</u>, No. 20-CV-01343, 2021 WL 1226384, at *9-15 (S.D.N.Y. Mar. 31, 2021); <u>Jackson v. Nassau County</u>, No. 18-CV-3007, 2021 WL 3207168, at *7-9 (E.D.N.Y. July 28, 2021) (Seybert, J.).

At the motion to dismiss stage, a court's task "is to assess the legal feasibility of the complaint; it is not to assess

the weight of the evidence that might be offered on either side." Lynch, 952 F.3d at 75.  "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.  The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it."  Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).  As Global Network explained, a motion for summary judgment, rather than a motion to dismiss, "is the proper procedural device to consider matters outside the pleadings, such as facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence."  Id.  To the extent matters outside the pleadings are considered by the court, the proper course is to convert the motion, pursuant to Rule 12(d), to one for summary judgment.  FED. R. CIV. P. 12(d).  Thus, on a motion to dismiss, the court limits its inquiry to the legal feasibility of the pleadings.

        For the reasons set forth in this Court's recent decision in Jackson, the Court will not consider the voluminous medical records submitted by Defendant O'Keefe at the dismissal stage. See Jackson, 2021 WL 3207168, at *7-9 (declining to consider eighteen exhibits relating to the defendants' homicide investigation filed at the dismissal stage to controvert the

plaintiff's allegations of police misconduct). Defendant O'Keefe's purpose in presenting these records is plain: She asks the Court to consider the history of Lindenbaum's care and treatment at Pilgrim's SOCR, based on a "small portion" of the available documents from Lindenbaum's stay, weigh that evidence, and conclude that the evidence "refute[s] many of the allegations in both the Complaint and the Proposed Amended Complaint." (Def. O'Keefe Reply at 2.) This is an invitation to error. See Global Network, 458 F.3d at 156 (holding the district court erred in "consider[ing] external material in its ruling" and "rely[ing] on those materials to make a finding of fact that controverted the plaintiff's own factual assertions set out in its complaint" (emphasis in original)); cf. Shakespeare v. Compu-Link Corp., 848 F. App'x 474, 475-76 (2d Cir. 2021) (vacating district court dismissal order for erroneously relying on materials outside the pleadings "to draw inferences against [plaintiff] and resolve factual disputes"); Lively v. WAFRA Inv. Advisory Grp., Inc., 2021 WL 3118943, at *6-7 (2d Cir. July 23, 2021) (disapproving of the district court's consideration of materials outside the pleadings). Accordingly, at this stage, the Court declines to consider these external materials to controvert the factual assertions set forth in Plaintiff's Proposed Amended Complaint.

B.   <u>Plaintiff's Proposed Amended Complaint</u>

1.   <u>Section 1983 Claim</u>

Plaintiff's Section 1983 claim alleges Defendant O'Keefe deprived Lindenbaum of his liberty interest in minimally adequate care and safety as protected by the Fourteenth Amendment to the United States Constitution.  <u>See</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 314 (1982); <u>Rosado v. Maxymillian</u>, No. 20-CV-3965, 2022 WL 54181, at *3 (2d Cir. Jan. 6, 2022).  In <u>Youngberg</u>, the Court held that institutionalized citizens, including the profoundly mentally ill, have a liberty interest in reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as is necessary to effectuate these interests.  457 U.S. at 315-19, 324. To determine whether the relevant state actor has met his or her obligations in these respects, courts must "make certain that professional judgment in fact was exercised."  <u>Id.</u>; <u>see also</u> <u>Rosado</u>, 2022 WL 54181, at *3 (reviewing district court's application of the "professional judgment standard").  Thus, "constitutional standards are met when the professional who made a decision exercised 'professional judgment' at the time the decision was made."  <u>Soc'y for Good Will to Retarded Children, Inc. v. Cuomo</u>, 737 F.2d 1239, 1248 (2d Cir. 1984); <u>see also</u> <u>Youngberg</u>, 457 U.S. at 323 ("[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial

14

departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."). Further, it is well settled that to establish liability under Section 1983, a plaintiff must "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution,'" that is, personally participated in the alleged constitutional deprivation. Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).

In arguing for dismissal of Plaintiff's Section 1983 claim, Defendant O'Keefe argues: (1) Plaintiff's allegations devolve into disagreements "as to how to best treat Mr. Lindenbaum's medical, psychiatric and emotional problems," and are better characterized as medical malpractice, not constitutional, claims (Def. O'Keefe Opp'n at 8, ECF No. 38); and (2) Plaintiff fails to adequately plead Defendant O'Keefe personally participated in the alleged deprivation of Lindenbaum's right to minimally adequate care (id. at 9-10). The Court disagrees. "Although there is a presumption of validity accorded to professionals under the Youngberg standard, at the pleading stage, Plaintiff only needs to allege facts to show that it is plausible that the Defendants departed substantially from professional standards." Parks v. Stevens, No. 20-CV-6384, 2022 WL 61011, at

15

*8 (W.D.N.Y. Jan. 6, 2022) (quoting <u>Miesegaes v. Allenby</u>, No. 15-CV-1574, 2019 WL 3364582, at *7 (C.D. Cal. June 20, 2019), <u>report and recommendation adopted</u>, 2019 WL 3340688 (July 24, 2019)). "The Second Circuit has described the 'substantial departure from professional judgment' standard as requiring 'more than simple negligence . . . but less than deliberate indifference.'" <u>Id.</u> at *7 (quoting <u>Kulak v. City of New York</u>, 88 F.3d 63, 75 (2d Cir. 1996)).

The facts in Plaintiff's Proposed Amended Complaint, taken as true, plausibly allege that Defendant O'Keefe, through her own conduct, substantially departed from professional standards by keeping Lindenbaum in the Pilgrim's SOCR. Specifically, Plaintiff alleges that the staff at Pilgrim's SOCR did not adequately supervise Lindenbaum, as the facility was not designed for individuals with SPMI such as Lindenbaum, which caused his physical condition to deteriorate to the point of hospitalization. Further, Plaintiff alleges that Dr. Sharoha, Lindenbaum's treating psychiatrist, recommended Lindenbaum be returned to full-time, in-patient care in a different facility, but that Defendant O'Keefe (or other, unidentified Pilgrim Jane or John Doe Defendants) received and rejected the recommendation, resulting in his continued residence at Pilgrim's SOCR. Fundamentally, Plaintiff claims that Defendant O'Keefe lacked the necessary qualifications to exercise the professional judgment

Lindenbaum's treatment decisions required.  This is sufficient at the pleading stage.  See Parks, 2022 WL 61011, at *7-8 (finding the plaintiff adequately pleaded a claim under Youngberg where she alleged that the defendants were aware that the deceased's "mental state had been deteriorating significantly and that she accordingly was increasingly vulnerable" at her facility, received credible reports that staff at her facility were physically and verbally abusing her, and had been asked by the decedent to be moved to a different facility, but nevertheless was kept her at the same facility, resulting in her death after an altercation with staff).  "Indeed, whether conduct was a substantial departure from professional judgment may be, at least on some occasions, a question of fact" requiring expert testimony.  Id. at *8 (citing Youngberg, 457 U.S. at 323 n.31).  While discovery may reveal that Defendant O'Keefe's actions were not a substantial departure from accepted professional judgment, and that Plaintiff's allegations could only sustain a medical malpractice claim, if that, at this stage, Plaintiff has pleaded sufficient facts to plausibly state a claim for a Fourteenth Amendment substantive due process violation under Youngberg.[3]

---

[3] To the extent Plaintiff pursues a claim against Defendant O'Keefe in her official capacity, that claim is barred by the Eleventh Amendment.  Watanmaker v. Clark, No. 09-CV-3877, 2010 WL 3516344, at *6-7 (E.D.N.Y. Aug. 31, 2010).

Accordingly, Defendant O'Keefe's motion to dismiss Plaintiff's Section 1983 claim is DENIED.

2.  ADA Claim

Plaintiff's proposed ADA claim alleges that Defendant O'Keefe discriminated against Lindenbaum by refusing to accommodate his request to return to full-time, in-patient care, thus causing his unjustified isolation at Pilgrim's SOCR.  See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 597 (1999) ("Unjustified isolation . . . is properly regarded as discrimination based on disability" under the ADA.).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a valid ADA claim under Title II, "a plaintiff must establish[:] '(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability.'"  Siino v. City of New York, No. 14-CV-7217, 2020 WL 1861865, at *8 (E.D.N.Y. Apr. 14, 2020) (quoting Davis v. Shah, 821 F.3d 231, 259 (2d Cir. 2016)).

The ADA further requires "[a] public entity [to] administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d) (the ADA's "integration mandate"). "In Olmstead, the Supreme Court interpreted the integration mandate to mean that the 'unjustified isolation' of disabled individuals in institutionalized care facilities constitutes discrimination on the basis of disability under the ADA." Davis, 821 F.3d at 262. Thus, "[i]n bringing an integration mandate claim, a plaintiff must demonstrate that the defendant's actions pose a serious risk of institutionalization for disabled persons," Siino, 2020 WL 1861865, at *9, which occurs where a "public entity's failure to provide community services . . . will likely cause a decline in health, safety, or welfare that would lead to the individual's eventual placement in an institution." Davis, 821 F.3d at 262-63; see also Woods v. Tompkins County, 804 F. App'x 94, 96 (2d Cir. 2020). To properly plead an Olmstead claim under the ADA, the plaintiff must allege "(1) treatment professionals have determined that community-based services are appropriate, (2) the plaintiffs do not oppose such services, and (3) the services can be reasonably accommodated." M.G. v. New York State Off. of Mental Health, No. 19-CV-0639, 2021 WL 5299244, at *8 (S.D.N.Y. Nov. 15, 2021) (citing Davis, 821 F.3d at 262).

In the instant case, the Court agrees with Defendant O'Keefe that Plaintiff's allegations do not plausibly plead a claim under Olmstead. Olmstead involved claims under the ADA brought by two institutionalized women who sought, based on the recommendations of their respective treating professionals, to be placed in a less-restrictive community-based setting. Olmstead, 527 U.S. at 593-94; see also Siino, 2020 WL 1861865, at *8 (rejecting the plaintiff's argument that the defendants violated the ADA "by steering her toward guardianship, rather than helping her secure benefits and an appropriate housing option in the community, [thus] increasing her risk of institutionalization and ultimately resulting in her actual institutionalization when she was hospitalized"). Here, the facts alleged present the opposite scenario: Plaintiff disagreed with Defendant O'Keefe's decision to continue Lindenbaum's residence in a more integrated setting, Pilgrim's SOCR, preferring instead he be returned to full-time in-patient care in a more restrictive setting. Thus, there are no allegations in the Proposed Amended Complaint that Defendant O'Keefe's actions posed a serious risk of institutionalization for Lindenbaum, or that Lindenbaum's treatment professionals determined that community-based services were appropriate -- in fact, according to the Proposed Amended Complaint, Dr. Sharoha determined the opposite.

Accordingly, Defendant O'Keefe's motion to dismiss Plaintiff's ADA claim is GRANTED.

C.   <u>Supplemental Jurisdiction</u>

Because Plaintiff's federal Section 1983 claim will proceed, the Court exercises supplemental jurisdiction over her New York State law claims for medical malpractice and conscious pain and suffering against the Northwell Defendants. A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367 ("Section 1367"), which provides in relevant part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . .

28 U.S.C. § 1367(a). The Northwell Defendants argue that the New York State law claims against them are not related to Plaintiff's Section 1983 claim, because Lindenbaum's care and treatment at Northwell "has no relation to what occurred at Pilgrim [PC]." (Northwell Opp'n at 4, ECF No. 34.) The Court disagrees. For purposes of Section 1367(a), claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact." <u>Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.</u>, 373 F.3d 296, 308 (2d Cir. 2004). Here, the "common nucleus of operative

fact" alleged in the Proposed Amended Complaint is Defendants' substandard provision of care to Lindenbaum, first at Pilgrim's SOCR, then at Northwell, and then again at Northwell. Thus, the claims alleged against the Northwell Defendants form part of the same case or controversy as those alleged against Defendant O'Keefe.

<u>CONCLUSION</u>

Accordingly, for the stated reasons, **IT IS HEREBY ORDERED** that

1) Defendant O'Keefe's motion to file certain medical records under seal (ECF No. 37) is GRANTED;

2) Defendant O'Keefe's motion to dismiss (ECF No. 27) is GRANTED with respect to Plaintiff's proposed ADA claim, and DENIED with respect to Plaintiff's Section 1983 claim;

3) Northwell Defendants' motion to dismiss (ECF No. 24) is DENIED; and

4) Plaintiff's cross-motion to file her Proposed Amended Complaint is GRANTED with respect to her Section 1983 claim, and DENIED with respect to her ADA claim.

It is **FURTHER ORDERED** that, within fifteen days from the date of this Memorandum & Order, Plaintiff shall file and serve her amended complaint consistent with this Memorandum & Order.

It is **FURTHER ORDERED** that, within twenty-one days from the date Plaintiff's amended complaint is filed and served, Defendants shall answer the amended complaint.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February  23 , 2022
       Central Islip, New York